IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| LAUXMONT HOLDINGS, *et al.* | : | No.  4:07-CV-1980 |
| Plaintiffs, | : | |
| | : | Judge John E. Jones III |
| v. | : | |
| | : | |
| COUNTY OF YORK, *et al.*, | : | |
| Defendants | : | |

## MEMORANDUM

June  11, 2008

This matter is before the Court on the motions of defendants the County of

York, Lori O. Mitrick, and Douglas E. Kilgore (the "County Defendants") and

Weinstein Realty Advisors and Elliot W. Weinstein (the "Weinstein Defendants")

seeking dismissal of the amended complaint of plaintiffs Lauxmont Holdings,

LLC ("Lauxmont") and its principal owner, Peter C. Alecxih.  For the reasons set

forth below, the motions will be granted and the Plaintiffs' claims will be

dismissed for lack of subject matter jurisdiction.

## I.    STANDARDS OF REVIEW

### A.    Rule 12(b)(1)

The defendants' motions argue, in part, that this Court lacks jurisdiction

over this action for various reasons, and therefore, that this action must be

dismissed pursuant to Rule 12(b)(1). When considering a motion to dismiss under Rule 12(b)(1), a court must distinguish between facial and factual challenges to its subject matter jurisdiction. *See Mortensen v. First Fed. Sav. & Loan Ass'n*, 549 F.2d 884, 891 (3d Cir. 1977). A facial attack challenges whether the plaintiff has made sufficient allegations in the complaint to comply with the Rule 8(a)(1) requirement to show that the federal court has jurisdiction over the subject matter of the case. *Id.*; *see also* 5B Wright & Miller, Federal Practice and Procedure § 1350. "In reviewing a facial attack, the court must only consider the allegations of the complaint and documents referenced therein and attached thereto, in the light most favorable to the plaintiff." *Gould Elecs., Inc. v. United States*, 220 F.3d 169, 176 (3d Cir. 2000) (citing *Mortensen*, 549 F.2d at 891). A factual attack, in contrast, challenges jurisdiction based on facts apart from the pleadings and despite the formal sufficiency of the Rule 8(a)(1) allegations in the complaint. *Mortensen*, 549 F.2d at 891. On a factual attack, both parties may use extra-pleading material to challenge or establish jurisdiction, and "the court is free to weigh the evidence and satisfy itself whether it has power to hear the case. In such a situation, 'no presumptive truthfulness attaches to plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims.'" *Carpet Group Int'l v.*

2

*Oriental Rug Importers Ass'n*, 227 F.3d 62, 69 (3d Cir. 2000) (quoting *Mortensen*, 549 F.2d at 891). In either case, the burden is on the party asserting jurisdiction to show that jurisdiction exists. *Pa. Protection & Advocacy, Inc. v. Houston*, 136 F. Supp. 2d 353, 359 (E.D. Pa. 2001). In this case, the defendants rely only on the complaint, documents referenced therein, and judicially noticeable material in challenging jurisdiction, and therefore, the Court will treat their motions as a facial challenge.

### B.    Rule 12(b)(6)

The defendants' motions also challenge the legal sufficiency of the plaintiffs' claims under Rule 12(b)(6). In considering a motion to dismiss pursuant to Rule 12(b)(6), courts "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Phillips v. County of Allegheny*, 515 F.3d 224, 231 (3d Cir. 2008) (quoting *Pinker v. Roche Holdings Ltd.*, 292 F.3d 361, 374 n.7 (3d Cir. 2002)).

A Rule 12(b)(6) motion tests the sufficiency of the complaint against the pleading requirements of Rule 8(a). Rule 8(a)(2) requires that a complaint contain a short and plain statement of the claim showing that the pleader is entitled to relief, "in order to give the defendant fair notice of what the claim is and the

3

grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, --- U.S. ----, 127 S. Ct. 1955, 1964 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* at 1965. A plaintiff must make "a 'showing' rather than a blanket assertion of an entitlement to relief", and "without some factual allegation in the complaint, a claimant cannot satisfy the requirement that he or she provide not only 'fair notice,' but also the 'grounds' on which the claim rests." *Phillips*, 515 F.3d at 232 (citing *Twombly*, 127 S. Ct. at 1965 n. 3). "[A] complaint must allege facts suggestive of [the proscribed] conduct, and the "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 127 S. Ct. at 1965, 1969 n.8. Therefore, "stating a claim requires a complaint with enough factual matter (taken as true) to suggest the required element." *Phillips*, 515 F.3d at 234 (quoting *Twombly*, 127 S. Ct. at 1965 n. 3).

On the other hand, "a complaint may not be dismissed merely because it appears unlikely that the plaintiff can prove those facts or will ultimately prevail on the merits." *Id.* at 231 (citing *Twombly*, 127 S. Ct. 1964-65, 1969 n.8). Rule 8

"does not impose a probability requirement at the pleading stage, but instead simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of the necessary element." *Id.* at 234.

## II.   BACKGROUND

This actions arises out of York County's use of its eminent domain power. The story begins, for our purposes, on April 4, 2002, when Lauxmont purchased a 78-acre parcel of land known as Highpoint.  (Amend. Compl. ¶ 22.)  Located in Lower Windsor Township, York County, Pennsylvania, Highpoint was formerly part of the 825-acre Kohr Farm.  (*Id.* at ¶¶ 23-24.)  Lauxmont paid $1.755 million for Highpoint.  (*Id.* at ¶ 25.)  The plaintiffs, builders of luxury homes, intended to construct and sell 51 such homes on Highpoint, and this project became an almost singular focus of their business.  (*Id.* at ¶¶ 27-30.)  To this end, the plaintiffs obtained subdivision and land development approvals and made various improvements to the site, and public water and sewer were made available to the property.  (*Id.* at ¶¶ 35-38.)  By December 2003, the plaintiffs had sold two vacant lots in Highpoint for $600,000 and $350,000.  (*Id.* at ¶ 40.)

The plaintiffs allege that defendants Mitrick and Kilgore, at the time, York County commissioners, opposed development of Highpoint and the Kohr Farm. (*Id.* at ¶ 42.)  They further allege that a committee known as the Susquehanna

River Preservation Project was formed to preserve the properties. (*Id.* at ¶ 43.)
This committee included members from the York County Planning Commission,
the Farm and Natural Lands Trust of York County, and the Lancaster-York
Heritage Commission, of which Mitrick was an *ex officio* board member. (*Id.* at ¶
46.) The plaintiffs aver that on February 20, 2004, the committee presented the
idea of stopping development of the properties to Mitrick and Kilgore, who agreed
to facilitate the preservation plan. (*Id.* at ¶¶ 51-52.)

Presumably as part of this effort, the Weinstein Defendants were retained by
the Farm and Natural Lands Trust on March 22, 2004 to appraise the Highpoint
property. (*Id.* at ¶ 72, Ex. A.) On April 5, 2004, the Weinstein Defendants
produced a written appraisal of Highpoint which valued the property at $2 million.
(*Id.* at ¶¶ 87, 89, Ex. A.) The plaintiffs allege that the Weinstein appraisal was
prepared negligently and in bad faith, and vastly underestimated the value of the
property.

The plaintiffs allege that significant efforts were made to force them to sell
Highpoint to the County, and that they eventually agreed to sell part of the
property, but that Mitrck and Kilgore rejected this offer. (*Id.* at ¶¶ 53-57.) Unable
to purchase all of Highpoint, Mitrck and Kilgore, who constituted a majority of the
County's Board of Commissioners, thereafter decided to use the County's power

6

of eminent domain to take the property.  (*Id.* at ¶¶ 59-60.)  On May 5, 2004, the County initiated a condemnation action by filing a declaration of taking in accordance with Pennsylvania's Eminent Domain Code, 26 Pa. C.S. § 1-101, *et seq.*[1]  (*Id.* at ¶ 61.)  After the declaration of taking was filed, the plaintiffs offered to sell Highpoint to the County for at least $15 million, but this offer was rejected. (*Id.* at ¶¶ 62-63.)

On June 4, 2004, Lauxmont filed preliminary objections to the County's declaration of taking.  *See* 26 Pa. C.S. § 1-406.  (*Id.* at ¶ 108; County Defs.' Mot. to Dismiss, Ex. A, Doc. 30-2.)  Lauxmont challenged the taking on a number grounds, arguing that:  (i) Highpoint was not a necessary part of the proposed park the County intended to create on the site; (ii) the taking was for the improper purpose of preventing development; (iii) the County acted in bad faith and in an arbitrary and capricious manner; (iv) the County was taking more property than it needed and should have accepted Lauxmont's offer to sell part of Highpoint; (v) the County provided insufficient security; and (vi) the County committed several

---

[1] The Eminent Domain Code was repealed in 2006 and recodified in the Pennsylvania Consolidated Statutes Annotated at 26 Pa. C.S.A. § 101, *et seq.*  *See* 2006, May 4, P.L. 112, No. 34.  The Court will refer to the Code provisions in effect at the time of the events giving rise to this action.

"procedural errors", including that Mitrick, who voted in favor of the taking, had a conflict of interest.[2]  (County Defs.' Mot. to Dismiss, Ex. A.)

On October 10, 2005, the York County Court of Common Pleas overruled Lauxmont's preliminary objections.  (Amend. Compl. ¶ 109.)  The court found that the taking was not excessive; it had been done with sufficient planning; although Mitrick and Kilgore "may have been opposed in a general way to development," the taking was not done in bad faith; the commissioners had no improper conflict of interest; and the County was not required to post a bond. (County Defs.' Mot. to Dismiss, Ex. B.)  On October 24, 2005, Lauxmont filed a motion for post trial relief regarding the court's ruling, but later withdrew the motion.  (Amend Compl. ¶ 111.)

After Lauxmont's preliminary objections were overruled and not appealed, on November 23, 2005, the County paid Lauxmont $2 million in estimated just compensation ("EJC") for Highpoint pursuant to 26 Pa. C.S. § 1-407.  (*Id.* at ¶

---

[2] The Court may consider Lauxmont's preliminary objections and other similar documents on the present motions because they are referenced in the complaint and are central to the plaintiffs' claims.  *Pryor v. Nat'l Collegiate Athletic Ass'n*, 288 F.3d 548, 560 (3d Cir. 2002); *In re Rockefeller Ctr. Props., Inc. Sec. Litig.*,184 F.3d 280, 287 (3d Cir. 1999).  Further, the Court may take judicial notice of the filings of another court.  *S. Cross Overseas Agencies, Inc. v. Wah Kwong Shipping Group Ltd.*, 181 F.3d 410, 426-27 (3d Cir. 1999).  Moreover, even if considered extra-pleading material, the Court may construe the defendants' motions as factual challenges to subject matter jurisdiction and examine facts such as these to satisfy itself of jurisdiction.  *See Carpet Group Int'l*, 227 F.3d at 69.

112.)  This amount was based on the Weinstein appraisal, which the plaintiffs allege the County Defendants knew or should have known undervalued the property.  (*Id.* at ¶¶ 116-17.)  The plaintiffs contend that the County Defendants' allegedly "low ball" EJC offer was made in bad faith.

The parties then turned to determining the total just compensation to be paid for Highpoint.  Pursuant to 26 Pa. C.S., Articles V and VII, a Board of Viewers held hearings on July 19-20, August 22-23, and September 1, 2006 on the issue of just compensation.  (*Id.* at ¶ 121.)  On October 23, 2006, the Board of Viewers issued a report which determined the just compensation for the property to be $10.5 million.[3]  *See* 26 Pa. C.S. §§ 1-511, 1-513.  (*Id.* at ¶ 123.)  On November 13, 2006, both the County and Lauxmont appealed the Board of Viewers' report.  *See* 26 Pa. C.S. §§ 1-516, 703.  (*Id.* at ¶ 126; County Defs.' Mot. to Dismiss, Exs. F, G.)  Lauxmont argued that the just compensation determined by the Board was inadequate, that the Board's determination with regard to delay damages was erroneous, and that several of the Board's factual findings were erroneous. (County Defs.' Mot. to Dismiss, Ex. G.)  Lauxmont demanded a jury trial.  (*Id.*)

---

[3] Although the complaint states that the Board of Viewers' report was filed with the Court of Common Pleas on October 13, 2005, *see* Amend. Compl. ¶ 123, both parties' appeals from the report state that it was filed on October 23, 2005, *see* County Defs.' Mot. to Dismiss, Exs. F, G.

On May 1, 2007, Lauxmont filed a petition for EJC with the Court of Common Pleas, in which it challenged the EJC amount offered by the County.  *See* 26 Pa. C.S. § 1-407(b).  (Amend. Compl. ¶ 127.)  The EJC petition raised numerous arguments, including that the Weinstein appraisal was inaccurate and done in bad faith and that the County's reliance on the appraisal and initial EJC offer were also in bad faith.  (*See id.* at ¶¶ 128(a)-(i).)

The County asked that Lauxmont hold the EJC petition in abeyance while three new appraisers provided EJC estimates.  (*Id.* at ¶¶ 130-131.)  Lauxmont agreed.  (*Id.* at ¶ 131.)  The three appraisers returned values for Highpoint of between $7.5 million and $7.9 million.  (*Id.* at ¶ 135.)  Relying on these appraisals, on August 31, 2007, the County increased its EJC offer to Lauxmont to $7.5 million, and on September 20, 2007, paid Lauxmont an additional $5.5 million on top of the $2 million previously paid.  (*Id.* at ¶¶ 137-38.)  The plaintiffs, however, claim that their appraisers have concluded Highpoint is worth between $17 million and $17.5 million.  (*Id.* at ¶ 139.)

The plaintiffs filed the original complaint in this action on October 29, 2007.  (Doc. 1.)  An amended complaint was filed on December 20, 2007.  (Doc. 21.)  The plaintiffs assert that the County Defendants and the Weinstein Defendants violated their constitutional rights to substantive due process,

10

procedural due process, and equal protection by preparing a bad faith appraisal and offering EJC in bad faith based on that appraisal.  (Amend. Compl., Counts I-III.)  The plaintiffs also assert a claim for negligence against the Weinstein Defendants regarding preparation of the appraisal.  (*Id.* at Count IV.)  As relief, the plaintiffs seek compensatory damages exceeding $20 million, attorney's fees, and punitive damages.

The defendants have moved, pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6), to dismiss the plaintiffs' claims, arguing that this Court lacks subject matter jurisdiction, that the claims are barred by the statute of limitation, and that the plaintiffs have failed to state claims upon which relief may be granted.

## III.   DISCUSSION

The defendants assert that the Court lacks subject matter jurisdiction over the plaintiffs' claims under the doctrines of ripeness, *Rooker-Feldman* abstention, and *Younger* abstention.  The Court agrees that the plaintiffs' claims are not ripe for adjudication and that the *Younger* abstention doctrine counsels declining jurisdiction over this action, and therefore, will dismiss the plaintiffs' claims.  Because the complaint will be dismissed for lack of jurisdiction, the Court will not address the defendants' challenges to the merits of the plaintiffs' claims.  *See Kehr*

*Packages, Inc. v. Fidelcor, Inc.*, 926 F.2d 1406, 1409 (3d Cir. 1991) ("Ordinarily, a court must assume jurisdiction over a case before deciding legal issues on the merits."); *see also* 5B Wright & Miller § 1350 (stating "the cases are legion stating that the district court should consider the Rule 12(b)(1) challenge first because if it must dismiss the complaint for lack of subject matter jurisdiction, the accompanying defenses and objections become moot and do not need to be determined by the judge").

## A.     Ripeness

"The ripeness doctrine serves to determine whether a party has brought an action prematurely and counsels abstention until such time as a dispute is sufficiently concrete to satisfy the constitutional and prudential requirements of the doctrine."  *County Concrete Corp. v. Town of Roxbury*, 442 F.3d 159, 164 (3d Cir. 2006) (quoting *Khodara Envtl., Inc. v. Blakey*, 376 F.3d 187, 196 (3d Cir. 2004)).  To be "ripe" for adjudication, "a case must involve 'a real and substantial controversy admitting of specific relief through a decree of a conclusive character, as distinguished from an opinion advising what the law would be upon a hypothetical state of facts.'"  *Surrick v. Killion*, 449 F.3d 520, 528 (3d Cir. 2006) (quoting *North Carolina v. Rice*, 404 U.S. 244, 246 (1971)).  "In determining whether a case is ripe, we generally examine:  '(1) the fitness of the issues for

judicial decision, and (2) the hardship of the parties of withholding court consideration.'" *Id.* (quoting *Khodara Envtl., Inc.*, 376 F.3d at 196).

In the Fifth Amendment takings context, however, the Supreme Court has more specifically held that an as-applied takings claim is not ripe until "(1) 'the government entity charged with implementing the regulations has reached a final decision regarding the application of the regulations to the property at issue' (the "finality rule"), and (2) the plaintiff has unsuccessfully exhausted the state's procedures for seeking 'just compensation,' so long as the procedures provided by the state were adequate." *County Concrete Corp.*, 442 F.3d at 164 (quoting *Williamson County Reg'l Planning Comm'n. v. Hamilton Bank*, 473 U.S. 172, 186, 194-95 (1985)). These ripeness requirements apply both to Fifth Amendment Just Compensation Clause claims and to due process and equal protection claims arising from the taking. *See id.* at 164, 168.[4]

In this case, the plaintiffs claims are not ripe because they have not pursued just compensation in state court via the procedures provided by Pennsylvania law.

---

[4] The ripeness requirements do not apply to due process and equal protection claims challenging an alleged confiscatory regulation on its face because the remedy for such a claim is the invalidation of the regulation and because the absence of just compensation is not part of the due process or equal protection injury. *See Williamson County*, 473 U.S. at 197; *County Concrete Corp.*, 442 F.3d at 164, 168-69. In this case, the plaintiffs do not mount a facial challenge to any County regulation, but rather complain only of the due process and equal protection violations allegedly occasioned by the defendants' application of the eminent domain power to their property.

The Fifth Amendment bars not the "taking" of property, but the taking of property "without just compensation," and therefore, if there is an adequate procedure for obtaining just compensation, a plaintiff cannot bring a constitutional claim arising out of a taking until he has exhausted such procedures. *Williamson County*, 473 U.S. at 194-95; *Chainey v. Street*, 523 F.3d 200, 223 (3d Cir. 2008); *County Concrete Corp.*, 442 F.3d at 164, 168-69. Pennsylvania's Eminent Domain Code has consistently been held to provide adequate process to obtain just compensation. *See, e.g.*, *Chainey*, 523 F.3d at 223; *Cowell v. Palmer Twp.*, 263 F.3d 286, 290 (3d Cir. 2001). Clearly, the plaintiffs have taken some steps to pursue just compensation: they made preliminary objections to the declaration of taking, had a board of viewers appointed, appealed the board's report, and have filed an EJC petition. The plaintiffs however have not pursued this process to its conclusion. Their appeal from the board's report and their EJC petition remain pending. The Pennsylvania courts may yet provide the plaintiffs the just compensation they seek, and unless and until the plaintiffs are finally denied just compensation in state court, their claims before this Court are not ripe.

The plaintiffs attempt to avoid this result by arguing that *Williamson County* is inapposite because their claims do not concern whether they received just compensation, but only the defendants' allegedly "bad faith" estimated just

14

compensation.  This argument proves too much.  Initially, as noted above, whether affixed with the label of just compensation, due process, or equal protection, the plaintiffs' claims that they were not paid enough for their property are subject to the ripeness requirements identified in *Williamson County*.  *See Williamson County*, 473 U.S. at 199-200; *County Concrete Corp.*, 442 F.3d at 164, 168.

Moreover, regardless of how they are denominated, the plaintiffs' claims plainly implicate the concept of just compensation.  While trying to distance themselves from the Fifth Amendment, the plaintiffs rely heavily on the principles of "equity" and "fairness" upon which "just compensation" is founded in attempting to explain why the defendants owe them a duty to provide "good faith" estimated just compensation.  *See, e.g.*, Amend. Compl. ¶¶ 66-67, 69, 71; Pls.' Opp'n Br., Doc. 37 at 14-15, Pls.' Opp'n Br., Doc. 38 at 15-16.  Further, as a practical matter, there is no way to determine whether the County's EJC was a "low ball" offer without comparing it to the true fair market value of the property, and therefore, the "just" compensation for the plaintiffs' property is necessarily at issue.

Most importantly, however, in their attempt to cleverly carve their claims out of the Fifth Amendment, the plaintiffs may have left themselves with no claim at all.  The plaintiffs attempt to narrow their claims to the allegation that the

15

defendants' paid them "bad faith" estimated just compensation, but the plaintiffs have no constitutional right to *estimated* just compensation.  The Constitution does not require that just compensation be paid "in advance of, or contemporaneously with, the taking; all that is required is that a reasonable, certain and adequate provision for obtaining compensation exist at the time of the taking." *Williamson County*, 473 U.S. at 194.  "Accordingly, if there is an adequate provision for compensation, no constitutional violation occurs until just compensation has been subsequently denied." *Chainey*, 523 F.3d at 223 (quoting *Williamson County*, 473 U.S. at 194).

The plaintiffs would have the Court create and enforce a right to just compensation at the time of a taking under the guise of a constitutional right to "good faith" estimated just compensation.  Well-established Fifth Amendment jurisprudence holds otherwise, *Williamson County*, 473 U.S. at 194, and in analogous contexts, other federal courts have rejected the plaintiffs' suggestion. *See, e.g.*, *United States v. Miller*, 317 U.S. 369, 383 (1943) ("The Act recognizes that there may be an error in the estimate and appropriately provides that, if the judgment ultimately awarded shall be in excess of the amount [of EJC] deposited, the owner shall recover the excess with interest."); *United States v. Cobb*, 328 F.2d 115, 117 (9th Cir. 1964) (holding that a condemnee may not challenge the

"bad faith" of EJC, and noting that the result of a contrary holding "would be that in practically every case of contested condemnation the defendant would first try the question of good faith, and thereafter the question of just compensation would have to be tried all over again"); *In re United States of America Praying for a Writ of Mandamus or Writ of Prohibition*, 257 F.2d 844 (5th Cir. 1958) ("Congress plainly gave the acquiring authority, not the courts, the function of estimating just compensation .... In short, all the decisions show that the estimating and tendering is within the control of the government and that no one has the constitutional right to receive just compensation before the property is taken."); *Edwards v. Ark. Power & Light Co.*, 683 F.2d 1149, 1159-60 (8th Cir. 1982) (Arnold, C.J., concurring) ("[T]he fact remains that the state did not, as a matter of federal law, have to require any [EJC] deposit at all.... A violation of state law, however willful or reprehensible, does not *ipso facto* amount to a constitutional tort.  It is hard for me to see, therefore, what ... good or bad faith has to do with federal constitutional rights."); *United States v. Certain Land Situated in City of Detroit, Wayne County, Mich.*, 43 F. Supp. 2d 762, 778-79 (E.D. Mich. 1999) (concurring with *Cobb* and *In re United States*); *Gigliotti v. Redev. Auth. of City of New Castle*, 362 F. Supp. 764, 766-67 (W.D. Pa. 1973) ("[T]he failure to deposit in advance as much money as plaintiffs wanted for their property is not a violation of the Civil Rights

17

provision."). *But see United States v. 44.00 Acres of Land, More or Less, Situate in the Town of Greece, County of Monroe, State of N.Y.*, 234 F.2d 410, (2d Cir. 1956) (stating, "*arguendo*, that a court has jurisdiction to vacate a Declaration of Taking where, contrary to the implied requirements of the statute, the estimate of the value of the condemned property is made by the Government in bad faith").

With the "bad faith" rhetoric laid aside, the plaintiffs' claims boil down to the argument that the County's initial payment was not just compensation, but, so long as adequate process exists for eventually obtaining just compensation, a condemnee has no constitutional claim unless and until that process results in the denial of just compensation.  Assuredly, this is not the first time that a condemnee received an initial payment that it felt fell short of the mark.  In the face of that, Pennsylvania's Eminent Domain Code provides adequate process to obtain just compensation, and the plaintiffs claims are properly addressed in the first instance to the state courts through that process.

The plaintiffs further argue, however, that the Eminent Domain Code provides no procedure by which they can challenge the "good faith" of the EJC offered by the County.  As an initial matter, the plaintiffs' argument is flatly contradicted by the face of their own complaint.  The plaintiffs explicitly state: "On May 1, 2007, Lauxmont filed a Petitioner for Estimated Just Compensation

18

(the 'EJC Petition') with the Court of Common Pleas of York County in which it challenged the EJC Amount." (Amend. Compl. ¶ 127.) The EJC Petition avers, *inter alia*, that the Weinstein's appraisal was not a good faith estimate of the value of the property and that the County's reliance on the appraisal resulted in a failure to make a good faith EJC offer to Lauxmont. (*Id.* at ¶ 128.) The plaintiffs have plainly asserted in the state courts the very same claims they have brought in this action. Moreover, the plaintiffs' argument is incorrect as a matter of law. The Eminent Domain Code and Pennsylvania caselaw provide condemnees a procedure by which to challenge an allegedly "bad faith" EJC offer. *See* 26 Pa. C.S. § 1-407(b); *In re Condemnation by City of Philadelphia of Leasehold of Airportels, Inc.*, 398 A.2d 224, 227 (Pa. Commw. Ct. 1979) ("The City also contends that the court below had no power or authority to enter into an inquiry with respect to the City's motives in making its Declaration of Estimated Just Compensation or, having found bad faith, to strike the Declaration, appoint an impartial appraiser and enter judgment on the amount of the impartial appraiser's valuation. We hold that it did."). The plaintiffs are also in no way precluded from advancing other federal claims in state court. *See San Remo Hotel, L.P. v. City and County of San Francisco*, 545 U.S. 323, 346 (2005).

Pennsylvania law provides adequate procedures by which a condemnee may challenge an allegedly bad faith EJC offer, and the plaintiffs in this case have utilized some of these procedures.  However, because the plaintiffs have not completed Pennsylvania's process for obtaining just compensation, their claims are not yet ripe to be brought before this Court, and therefore, their complaint will be dismissed.

### B.  *Rooker-Feldman* Abstention

The County Defendants also argue that the plaintiffs have raised claims in this action that are "inextricably intertwined" with their claims before the state courts, and therefore this Court lacks subject matter jurisdiction under the *Rooker-Feldman* doctrine.  The defendants' argument, however, stretches the *Rooker-Feldman* doctrine too far and is foreclosed by the Supreme Court's recent decision in *Exxon Mobil Corp. v. Saudi Basic Industries Corp.*, 544 U.S. 280 (2005).

In certain circumstances, the *Rooker-Feldman* doctrine, which takes its name from the Supreme Court's opinions in *Rooker v. Fidelity Trust Co.*, 263 U.S. 413 (1923) and *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462 (1983), deprives a federal district court of jurisdiction to review a state court adjudication.  The doctrine is derived from 28 U.S.C. § 1257, by which Congress granted the Supreme Court, but not other federal courts, the power to review state

court decisions.  *Gary v. Braddock Cemetery*, 517 F.3d 195, 200 (3d Cir. 2008).

Traditionally, it has been stated that "a claim is barred by *Rooker-Feldman* under

two circumstances:  first, if the claim was actually litigated in state court prior to

the filing of the federal action or, second, if the claim is inextricably intertwined

with the state adjudication, meaning that federal relief can only be predicated upon

a conviction that the state court was wrong."  *Desi's Pizza, Inc. v. City of Wilkes-*

*Barre*, 321 F.3d 411, 420 (3d Cir. 2003) (citing *Parkview Assoc. P'ship v. City of*

*Lebanon*, 225 F.3d 321, 325 (3d Cir. 2000)).

In *Exxon Mobil*, however, the Supreme Court cautioned that "the doctrine

has sometimes been construed to extend far beyond the contours of the *Rooker* and

*Feldman* cases."  544 U.S. at 283.  The *Exxon Mobil* Court "emphasized the

narrow scope of the *Rooker-Feldman* doctrine, holding that it 'is confined to cases

of the kind from which the doctrine acquired its name:  cases brought by

state-court losers complaining of injuries *caused by* state-court judgments

rendered before the district court proceedings commenced and inviting district

court review and rejection of those judgments.'"  *Turner v. Crawford Square*

*Apartments III, L.P.*, 449 F.3d 542, 546 (3d Cir. 2006) (quoting *Exxon Mobil*, 544

U.S. at 284) (emphasis added); *see also Moncrief v. Chase Manhattan Mortgage*

*Corp.*, C.A. No. 07-4145, 2008 WL 1813161, at *2 (3d Cir. Apr. 23, 2008) ("The

doctrine applies only when a plaintiff asks a district court to redress an injury caused by the state court judgment itself – not when a plaintiff merely seeks to relitigate a claim or issue already litigated in state court.").

In this case, while the plaintiffs raise issues similar, or even identical, to those that they have or will raise before the state courts, they do not claim that any state-court adjudication caused their injuries. Rather, the plaintiffs argue that the defendants' taking of their property and allegedly insufficient EJC caused their injuries. To apply *Rooker-Feldman* in these circumstances would extend the doctrine beyond the holdings of the cases on which it is based. *See Taliaferro v. Darby Twp. Zoning Bd.*, 458 F.3d 181, 192-93 (3d Cir. 2006). In fact, the Court's holding that the plaintiffs' claims are not yet ripe because of their failure to exhaust Pennsylvania just compensation procedures precludes application of *Rooker-Feldman*, as any relevant state court judgment could not have been "rendered before the district court proceedings commenced." *See Exxon Mobil*, 544 U.S. at 284. *Rooker-Feldman* does not bar the plaintiffs claims.

## C.     *Younger* **Abstention**

The County Defendants correctly argue, however, that the doctrine of *Younger* abstention bars the plaintiffs' claims. Under that doctrine, "[a] federal district court has discretion to abstain from exercising jurisdiction over a particular

claim where resolution of that claim in federal court would offend principles of comity by interfering with an ongoing state proceeding." *Addiction Specialists, Inc. v. Twp. of Hampton*, 411 F.3d 399, 408 (3d Cir. 2005) (citing *Younger v. Harris*, 401 U.S. 37 (1971)). *Younger* abstention is only appropriate where the following three requirements are satisfied: "(1) there are ongoing state proceedings that are judicial in nature; (2) the state proceedings implicate important state interests; and (3) the state proceedings afford an adequate opportunity to raise the federal claims." *Id.*

The Court finds that the requirements for application of *Younger* abstention are met in this case. First, there are ongoing state judicial proceedings: both Lauxmont and the County's appeal of the Board of Viewers report and Lauxmont's EJC Petition remain pending.[5] Were this Court to determine whether the defendants' acted in bad faith in preparing and making their EJC offer, we would decide one of the questions that Lauxmont has placed before the Court of Common Pleas in its EJC Petition. Further, there is no way for this Court to determine whether the County's EJC was a "low ball" offer without comparing it to the true fair market value of the property. To determine the property's value,

---

[5] It is irrelevant for purposes of *Younger* abstention, that the parties agreed to hold the EJC Petition in abeyance. *See Addiction Specialists, Inc.*, 411 F.3d at 408-09.

however, would address the issue both the County and Lauxmont have raised in their appeal from the Board of Viewer's report. This Court's exercise of jurisdiction over this action would directly interfere with ongoing state-court proceedings, and therefore, the first prong of the *Younger* analysis is easily met.

The second prong is also satisfied. The use of the power of eminent domain implicates important state interests, and federal courts have generally resisted entangling themselves in such issues. *See, e.g.*, *San Remo Hotel, L.P.*, 545 U.S. at 346 (noting "there is scant precedent for the litigation in federal district court of claims that a state agency has taken property in violation of the Fifth Amendment's Takings Clause"); *Louisiana Power & Light Co. v. City of Thibodaux*, 360 U.S. 25, 28 (1959) (stating eminent domain "is intimately involved with sovereign prerogative"); *Rucci v. Cranberry Twp.*, 130 Fed. Appx. 572, 577 (3d Cir. 2005) (stating "eminent domain is [a] distinctly state-law matter.").[6,7]

---

[6] Although many of the cases noting the state's important interest in use of the eminent domain power arise in the context of *Burford* abstention, *see Burford v. Sun Oil Co.*, 319 U.S. 315 (1943), the Third Circuit has noted that cases applying *Burford* are "instructive if not controlling" in cases raising *Younger* abstention. *Addiction Specialists, Inc.*, 411 F.3d at 410 n.8.

[7] In the context of a challenge to the Pennsylvania Municipal Planning Code and a local zoning ordinance, the Third Circuit distinguished between claims challenging the validity of a state's land use policies and laws, which do implicate important state interests for *Younger* abstention purposes, and claims alleging discriminatory actions by officials in making land use decisions, which do not. *See Addiction Specialists, Inc.*, 411 F.3d at 409. The "implicit instruction" of *Addiction Specialists* and *Heritage Farms, Inc. v. Solebury Township*, 671 F.2d

Finally, in regard to the third prong of the *Younger* analysis, we have already noted that the plaintiffs can raise their "bad faith" EJC claim before the state courts, and in fact, have done so.   *See* Amend. Compl. ¶¶ 127-28; *Airportels, Inc.*, 398 A.2d at 227-28.   Before the state courts, the plaintiffs may seek estimated just compensation, 26 Pa. C.S. § 1-407(b); full just compensation, 26 Pa. C.S., Art. V, § 1-601; general damages, moving and removal expenses, business dislocation damages, and other items of special damages, 26 Pa. C.S. §§ 1-511, 514, 518; limited reimbursement of appraisal and attorney's fees, 26 Pa. C.S. § 1-610; and delay compensation in the form of 6% interest, 26 Pa. C.S. § 1-611.   In short, the plaintiffs have adequate opportunity to raise their claims for relief in state court.

Each of the requirements for *Younger* abstention is met in this case, and the Court will exercise its discretion to abstain from adjudication of the plaintiffs' claims.   On the facts before us, we frankly cannot envision a more inappropriate

---

743 (3d Cir. 1982), upon which that case relied, however, "is that where, as here, the only issue present is a land use question, ... abstention may be appropriate."  *Rucci*, 130 Fed. Appx. at 578 n.8.  Moreover, the dichotomy identified in *Addiction Specialists* does not readily translate to this case.  The plaintiffs here do not challenge the County's eminent domain power *or* the County's decision to use that power to take their property.  The only issue raised is whether the plaintiffs received adequate (estimated) just compensation.  The issue of how much the County must pay for a taken property is certainly one of immense local importance, and is the very issue currently before the state court.  *Younger's* "strong federal policy against federal-court interference with pending state judicial proceedings," *Middlesex County Ethics Comm. v. Garden State Bar Ass'n*, 457 U.S. 423, 431 (1982), counsels against this Court intruding upon the state court's ability to resolve this issue.

course than for this federal court to wade into a complex matter that is pending and not yet fully adjudicated in the state courts.   Indeed, given our holding that the plaintiffs' claims are not ripe and must be first addressed to the state courts, it would be nonsensical for this Court to interfere with the plaintiffs' ability to do so by exercising jurisdiction over this action.

## IV.   CONCLUSION

Because the plaintiffs' claims are not ripe, and pursuant to the doctrine of *Younger* abstention, the Court will dismiss this action for lack of subject matter jurisdiction.   Dismissal is without prejudice.   *See In re Orthopedic "Bone Screw" Prod. Liab. Litig.*, 132 F.3d 152, 155-56 (3d Cir. 1997).   Because the complaint will be dismissed for lack of jurisdiction, the Court will not address the defendants' arguments that the plaintiffs' claims are barred by the statue of limitations or that the plaintiffs have failed to state a claim upon which relief may be granted.[8]   *See Kehr Packages, Inc.*, 926 F.2d at 1409; 5B Wright & Miller § 1350.   An appropriate order will issue.

---

[8] The Court thus expresses no opinion as to the potential viability of the plaintiffs' claims should they proceed fully through the state courts and then decide to reassert their federal claims on that basis.